# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RHONDA BRAUN,                                    Case No. 1:12-cv-12
     Plaintiff,                                Dlott, J.
                                                Litkovitz, M.J.
     vs.

COMMISSIONER OF                                 **REPORT AND**
SOCIAL SECURITY,                                **RECOMMENDATION**
     Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of

Errors (Doc. 17), the Commissioner's response in opposition (Doc. 22), and plaintiff's reply

memorandum. (Doc. 25).

## I. Procedural Background

Plaintiff filed an application for DIB in February 2009, alleging disability since February

1, 2008, due to anxiety and depression. Plaintiff's application was denied initially and upon

reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before

administrative law judge (ALJ) Christopher B. McNeil. Plaintiff, plaintiff's daughter, and a

vocational expert (VE) appeared and testified at the ALJ hearing. On July 7, 2011, the ALJ

issued a decision finding that plaintiff was not disabled. Plaintiff's request for review by the

Appeals Council was denied, making the decision of the ALJ the final administrative decision of

the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.

2

2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since February 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: major depressive disorder, dysthymic disorder, and panic disorder without agoraphobia (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: understand and remember simple to moderately complex (one to four-step) task instructions; sustain attention to complete simple repetitive tasks where production quotas are not critical; tolerate co-workers and supervisors with limited interpersonal demands in an object-focused, nonpublic work setting, and adapt to routine changes in a simple work setting.
>
> 6. The [plaintiff] is capable of performing past relevant work as a laborer/packing-hand (DOT Code 920.587-018, SVP 2), classified as a medium, unskilled work and performed as light by the claimant, and as a packer-machine (DOT Code 920.685-078, SVP 2), classified as medium, unskilled work. This work does not require the performance of work-related activities precluded by the [plaintiff's] residual functional capacity (20 CFR 404.1565).

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from November 1, 2008, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 13-23).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

4

otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erred in finding that plaintiff did not satisfy the criteria for Listing 12.04; (2) the ALJ erred in formulating plaintiff's residual functional capacity (RFC); (3) the ALJ erred in weighing the medical opinion evidence of record; and (4) the ALJ erred in discounting plaintiff's credibility. Plaintiff's second and third assignments of error will be addressed together.

1. The ALJ did not err in finding that plaintiff's psychiatric impairments did not meet the criteria for Listing 12.04.

Plaintiff contends the ALJ erred in failing to find that she met or equaled Listing 12.04. However, for the following reasons, the undersigned finds the ALJ's determination to be substantially supported by the record evidence.

Listing 12.04 pertains to affective disorders and provides, in pertinent part:

Affective disorders. Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

a. Anhedonia or pervasive loss of interest in almost all activities; or

b. Appetite disturbance with change in weight; or

c. Sleep disturbance; or

5

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

i. Hallucinations, delusions, or paranoid thinking . . . .

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.  To satisfy the "paragraph B" criteria, the mental

6

impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. To satisfy the "paragraph C" criteria, there must be a medically documented history of a chronic affective disorder of at least two years which causes more than minimal limitation on the plaintiff's ability to do basic work activities accompanied by one of the following: repeated episodes of decompensation, each of extended duration; a residual disease process that results in such marginal adjustment that a minimal increase in mental demands would be predicted to cause the plaintiff to decompensate; or a history of one or more years of the plaintiff being incapable of functioning outside of a highly supportive living arrangement.

The ALJ found that plaintiff's severe mental impairments, major depressive disorder and anxiety disorder, considered singly and in combination do not meet or medically equal the criteria of Listing 12.04 because they do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration. The ALJ found that plaintiff has mild limitations in activities of daily living; mild limitations in social functioning; moderate limitations in concentration, persistence, or pace; and has experienced no episodes of decompensation of extended duration. (Tr. 14). The ALJ also considered the "paragraph C" criteria and found that the record evidence failed to establish that plaintiff was completely unable to function independently outside of her home. (Tr. 15).

7

While plaintiff argues that she meets the criteria for paragraphs A, B, and C, as the ALJ's decision only includes findings with respect to paragraphs B and C, the Court's inquiry is limited to those criteria.[1]

Plaintiff contends the ALJ erred in his Listings determination because the treatment notes from Centerpoint[2] and the opinions of her counselor, Laura Rollins, PCC-S, and treating psychiatrist, Shakil Rahman, M.D., demonstrate that her psychological impairments meet the requirements of Parts B and C of Listing 12.04. Ms. Rollins opined that plaintiff has marked restrictions in her activities of daily living and social functioning; Dr. Rahman endorsed this opinion in April 2011. (Tr. 332-34, 427). Plaintiff asserts Ms. Rollins and Dr. Rahman's opinions are consistent with treatment notes documenting her limitations in activities of daily living and social functioning and that the ALJ erred by failing to "adequately explain why [p]laintiff's psychiatric impairments do not meet [Listing 12.04]." (Doc. 17 at 9-11).

Contrary to plaintiff's contentions, the ALJ adequately explained his Listings decision and gave legitimate reasons for discounting Ms. Rollins and Dr. Rahman's opinions that plaintiff had marked limitations in her activities of daily functioning and social functioning. As discussed further, *infra*, the ALJ reasonably discounted these opinions because (1) they were not supported by the treatment notes; (2) they were inconsistent with plaintiff's subjective reports of activities of daily living and social functioning; (3) they were based primarily on plaintiff's less than credible subjective statements and not otherwise supported by clinical evidence; and (4) they conflicted with the opinions of the state agency reviewing psychologists who found that plaintiff

---

[1] Regardless of whether plaintiff satisfies the criteria for paragraph A, which it appears she may, to meet Listing 12.04 she must also satisfy the criteria of either paragraph B or C. Consequently, the Court's scope is properly limited to the ALJ's findings.

[2] The record includes treatment notes from Centerpoint, Norcen, and Talbert House. These are collectively

had only mild limitations in these functional areas. (Tr. 14-21). In support, the ALJ noted plaintiff's reports that she cleaned her home twice monthly, prepared simple meals, and watched television. (Tr. 14, citing Tr. 155, 298, 414). The ALJ also noted that plaintiff plays Farmville on the internet for up to six hours a day. *Id.*, citing Tr. 416. The ALJ also identified evidence supporting his finding that plaintiff was not markedly limited in her social functioning abilities. Specifically, the ALJ noted that plaintiff hosted friends at her home; visited with her family members; shopped; attended doctor's appointments with family members; and participated in a research study. *Id.*, citing Tr. 156-57, 173-74, 337, 351, 371, 403, 408, 419). *See also* Tr. 20 (in discounting plaintiff's credibility as to her reported activities of daily living, the ALJ noted that she had recently worked 50 hours a week at a seasonal job; was planning to look for part-time work; and was scrapbooking). In light of the ALJ's specific citations to evidence of record supporting his opinion that plaintiff's limitations in activities of daily living and social functioning did not meet the paragraph B criteria of Listing 12.04, plaintiff's contention that the ALJ did not adequately explain his rationale is not persuasive.

Plaintiff also contends that Ms. Rollins and Dr. Rahman's findings of marked limitations are a sufficient basis for finding that the ALJ erred in determining that plaintiff did not meet Listing 12.04's B paragraph criteria. The ALJ discounted the opinions of Ms. Rollins and Dr. Rahman because they were based primarily on plaintiff's subjective statements, not supported by clinical observations, and inconsistent with their treatment notes.[3] (Tr. 21). The ALJ also noted that plaintiff was not fully reliable as demonstrated by her representations to governmental agencies regarding her work and earnings history (Tr. 13) and various other inconsistencies

---

referred to as Centerpoint records by plaintiff. The Court will follow the same.

[3] The ALJ's analysis of the opinion evidence of record with respect to the paragraph B criteria is discussed

between plaintiff's statements in disability reports and to her therapists, and her ALJ hearing testimony.[4] The ALJ's decision to discount Ms. Rollins and Dr. Rahman's findings of marked limitations in activities of daily living or social functioning is substantially supported; thus, so is his finding that plaintiff does not meet the paragraph B criteria of Listing 12.04.

Plaintiff's argument that she meets the paragraph C criteria of the Listing consists entirely of the following: "[p]laintiff has even exhibited an inability to leave her house independently (Tr. 318, 330, 421, 425), which implicates Section C of Listing 12.04." (Doc. 17 at 11). The evidence plaintiff cites to is (1) an assessment by A.A. Weech, M.D., plaintiff's prior treating psychiatrist, who noted that plaintiff's panic was triggered by leaving the house (Tr. 318) and (2) Ms. Rollins' notation that plaintiff reports "she never goes anywhere alone due to anxiety." (Tr. 330, 421).

The ALJ's decision includes the following discussion of the paragraph C criteria:

> The undersigned has also considered whether the 'paragraph C' criteria are satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria. The evidence, as discussed above regarding the [plaintiff]'s activities, shows that she is not completely unable to function independently outside her home.

(Tr. 15). For the following reasons, the undersigned finds that the ALJ's determination that plaintiff does not meet the paragraph C criteria of Listing 12.04 is substantially supported.

Part C of Listing 12.04 requires that an individual's affective disorder result in a complete inability to function independently outside the area of one's home. The instant record evidence includes multiple statements by plaintiff demonstrating that she is capable of functioning independently outside of her home. *See* Tr. 156-57 (plaintiff stated in a Function Report that she

---

more thoroughly below in connection with plaintiff's statement of errors two and three.
    [4] This evidence regarding the ALJ's credibility finding is detailed below in connection with plaintiff's

shops monthly and goes out for special events and to see her grandchildren); Tr. 341 (plaintiff

enjoyed trick or treating on Halloween with her grandchildren); Tr. 356 (plaintiff reported

working a 50 hour a week seasonal job away from the home); Tr. 371, 408, 417, 419 (plaintiff

either attended or planned on attending various friends and family member's doctor's

appointments); Tr. 402 (plaintiff reported that she would like to live alone); Tr. 414 (plaintiff

spent Mother's day with her mother); Tr. 402 (plaintiff enjoyed a visit to Tennesse for her

nephew's wedding). In light of this evidence, plaintiff's cursory argument - based on two

subjective reports of increased anxiety outside the home - is without merit. Plaintiff has cited to

no objective opinion or clinical evidence whatsoever in support of this argument. As the record

reflects that plaintiff is able to function outside of the home, the undersigned finds that the ALJ's

determination that she does not meet the paragraph C criteria of Listing 12.04 is substantially

supported.

The ALJ's decision reflects a thorough review of the record and substantial evidence

supports his conclusion that plaintiff's mental impairments do not satisfy Listing 12.04.

Accordingly, the ALJ's finding that plaintiff's psychological impairments do not meet the

Listings should be upheld.

2. The ALJ did not err in formulating plaintiff's RFC or in weighing the medical opinions of record.

Plaintiff contends the ALJ erred by giving "significant weight" to the opinions of the

nonexamining, state agency psychologist, Carl Tishler, Ph.D., and giving "less weight" to the

opinions of Ms. Rollins and Dr. Rahman, plaintiff's treating sources, in assessing plaintiff's

---

fourth assignment of error.

11

RFC. Plaintiff further asserts that the ALJ erred by selectively citing to the evidence of record

that supported the ALJ's determination while failing to address contrary evidence.

The ALJ determined that plaintiff has the RFC to perform a full range of work at all

exertional levels but with the following nonexertional limitations:

> understand and remember simple to moderately complex (one to four-step) task instructions; sustain attention to complete simple repetitive tasks where production quotas are not critical; tolerate co-workers and supervisors with limited interpersonal demands in an object-focused, nonpublic work setting, and adapt to routine changes in simple work setting.

(Tr. 15).

In contrast, Ms. Rollins opined in January 2010 that plaintiff had marked restrictions in

her activities of daily living and in social functioning, and plaintiff's depression and anxiety

precluded her from being able to complete a normal workday and workweek without

interruption; accept instructions and respond appropriate to criticism from supervisors; and deal

with normal work stress. (Tr. 332-34). Ms. Rollins' opinion was endorsed by Dr. Rahman on

April 27, 2011. (Tr. 427). Plaintiff contends the ALJ erred by not giving the most weight to Ms.

Rollins' opinion as her extensive treatment relationship with plaintiff and her longitudinal

knowledge of plaintiff's limitations place her in the best position to proffer an opinion on

plaintiff's work-related capabilities. Plaintiff recognizes that Ms. Rollins is not an "acceptable

medical source" as defined by the regulations, *see* 20 C.F.R. §§ 404.1502, 404.1513(a), but

argues that under Social Security Ruling (SSR) 06-3p, her opinion should have been given the

most weight as Ms. Rollins has had "close contact with [plaintiff] and [has] personal knowledge

and expertise to make judgments about [plaintiff's] impairment[s], activities, and level of

12

functioning over a period of time." SSR 06-3p[5]. For the following reasons, the undersigned

finds the ALJ did not err in weighing the opinion evidence of record or in formulating plaintiff's

RFC.

The Sixth Circuit has recently reaffirmed the long-standing principle that the "ALJ 'must'

give a treating source opinion controlling weight if the treating source opinion is 'well-supported

by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent

with the other substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406 (quoting

*Wilson*, 378 F.3d at 544; former 20 C.F.R. § 404.1527(d)(2)).  When the ALJ declines to give

controlling weight to a treating physician's assessment, "the ALJ must still determine how much

weight is appropriate by considering a number of factors, including the length of treatment

relationship and the frequency of examination, the nature and extent of the treatment relationship,

supportability of the opinion, consistency of the opinion with the record as a whole, and any

specialization of the treating physician." *Blakley*, 581 F.3d at 406.

In accordance with this rule, the ALJ must give "good reasons" for the ultimate weight

afforded the treating physician opinion, based on the evidence in the record, and the reasons must

be sufficiently specific to enable meaningful review of the ALJ's decision. *Id.* at 406-07 (citing

former 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 WL 374188, at *5;

*Wilson*, 378 F.3d at 544).  The ALJ's failure to adequately explain the reasons for the weight

given a treating physician's opinion "*denotes a lack of substantial evidence, even where the*

---

[5] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner. 20 C.F.R. § 402.35(b)(1). In *Wilson*, 378 F.3d at 549, the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations, but *assumed* that they are. [The Court] makes the same assumption in this case." *Ferguson v. Comm'r of Soc. Sec.,* 628 F.3d 269, 272 n.1 (6th Cir. 2010) (emphasis in original).

conclusion of the ALJ may be justified based upon the record." *Blakley*, 581 F.3d at 407 (emphasis in the original) (quoting *Rogers*, 486 F.3d at 243). In evaluating opinions from non-medical professionals, such as counselors, it is appropriate for the ALJ to consider: (1) the nature and extent of the relationship between the source and the individual; (2) the source's qualifications; (3) the source's area of specialty or expertise; (4) the degree to which the source presents relevant evidence to support her opinion; (5) the consistency of the opinion with other evidence; and (6) any other factors that tend to support or refute the opinion. SSR 06-3p.

Here, the ALJ gave "significant weight" to the opinion of Dr. Tishler, the nonexamining state agency psychologist. (Tr. 19). Dr. Tishler's opinion was based on a review of plaintiff's treatment notes from Centerpoint from July 2007 to April 2009, when he completed his mental RFC assessment. Dr. Tishler noted that plaintiff had a history of anxiety and upon her intake at Centerpoint reported, *inter alia*, crying, tension, and insomnia. (Tr. 258). Dr. Tishler acknowledged that upon intake plaintiff had a depresses mood and constricted affect; however, she was cooperative, appeared well groomed, had clear speech, and exhibited normal thought content and a logical thought process. *Id*. Dr. Tishler discussed plaintiff's medication and noted that the treatment records demonstrated that plaintiff's symptoms had decreased since her intake interview. *Id*. Dr. Tishler addressed plaintiff's reports of recently working a 50 hour per week job and marital issues and noted that plaintiff's activities of daily living included being able to care for her personal hygiene, prepare simple meals, shop, pay bills, count change, go to doctor's appointments, and spend time with her family, particularly her grandchildren. *Id*. Dr. Tishler noted that plaintiff's statements were considered only partially credible as she reported more severe symptomology on her disability forms than to her treating sources. *Id*. For her RFC, Dr.

14

Tishler opined that plaintiff had mild limitations in her activities of daily living and social functioning; moderate limitations in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 252). Dr. Tishler opined that plaintiff "retains the ability to perform simple to moderately complex one to four step tasks and would do best with only superficial public contact in a static work environment." (Tr. 258).

Plaintiff asserts Dr. Tishler's opinion should not have been given significant weight as it was based on an incomplete review of the record. Plaintiff cites specifically to 11 exhibits that were submitted after Dr. Tishler tendered his opinion. (Doc. 17 at 17, citing Tr. 260-83, 285-427). Plaintiff also argues that Dr. Tishler's opinion is not deserving of significant weight as he found that plaintiff suffered only from an affective disorder and an anxiety disorder while the ALJ determined that plaintiff had the severe impairments of major depressive disorder, dysthymia, and panic disorder. Plaintiff's arguments are not well-taken.

First, contrary to plaintiff's contention that Dr. Tishler did not consider the severe impairments found by the ALJ, his RFC assessment clearly includes a finding that plaintiff has major depressive disorder, single episode, as well as dysthymic and panic disorders. (Tr. 245, 247). These findings fit squarely with the ALJ's severe impairment determination and the other diagnostic evidence of record. *See* Tr. 225 (Centerpoint treatment notes include diagnoses of major depressive disorder single episode, unspecified, dysthymic disorder, and panic disorder without agoraphobia); Tr. 245, 247 (Dr. Tishler's RFC assessment recognizing the same); Tr. 330 (Ms. Rollins' opinion diagnosing the same).

Second, to the extent Dr. Tishler's opinion did not include an analysis of plaintiff's treatment records from April 2009 forward, plaintiff has failed to demonstrate that this evidence

includes any clinical observations or subjective reports that are inconsistent with the records upon which Dr. Tishler relied in assessing plaintiff's RFC. Notably, nonexamining state agency psychologist Douglas Pawlarczyk, Ph.D., reviewed the file again in September 2009 and was able to review the treatment notes through July 2009. (Tr. 284). After reviewing this evidence, Dr. Pawlarczyk affirmed Tishler's RFC opinion and opined that it was still appropriate for plaintiff, noting that the recent treatment notes reflected that plaintiff feels medication is helping her and there are no findings of psychosis or suicidal ideation. *Id.*

Third, insofar as plaintiff contends Dr. Tishler's RFC opinion is unsupported by the remaining record evidence – plaintiff's treatment notes from August 2009 to April 2011 – a review of this evidence reflects that the ALJ's decision to give significant weight to the reviewing psychologists is substantially supported. The few objective findings in these records are consistent with the prior progress notes in observing that plaintiff oscillated at various times from having a euthymic to depressed mood. *Compare* Tr. 384, 386-87, 390, 392 (treatment notes from 2010 and 2011) *with* Tr. 359-74 (treatment notes from 2008). Further, the later-generated progress notes reflect that plaintiff's impairments remained unchanged or improved somewhat after Dr. Tishler and Dr. Pawlarcyzk tendered their opinions. *See* Tr. 343 (October 2009 notes include findings of depressed mood but plaintiff reported engaging in activities such as scrapbooking); Tr. 341 (plaintiff reported a decrease in depression due to new medication, but was still depressed, and reported really enjoying taking her grandchildren trick or treating for Halloween); Tr. 337 (In January 2010, plaintiff's reported ongoing depression and lack of motivation). These notes are consistent with the evidence reviewed by the state agency reviewing psychologists and plaintiff has failed to identify how a review of these later notes

16

would support a more restrictive RFC assessment than that provided by Dr. Tishler. Accordingly, the undersigned finds that the ALJ's determination to give significant weight to the opinions of the nonexamining state agency psychologists is substantially supported by the record evidence.

Ms. Rollins' opinion, endorsed by Dr. Rahman, that plaintiff has marked limitations which preclude her from engaging in work-related activities, stands in stark contrast to the state agency psychologists' opinions. Plaintiff argues that the ALJ failed to give Ms. Rollins' opinion the requisite weight under SSR 06-3p in light of her extensive treating relationship with plaintiff. Plaintiff further contends Ms. Rollins' opinion is supported by her treatment notes and plaintiff's subjective reports. The undersigned disagrees.

In considering Ms. Rollins' opinion, the ALJ properly acknowledged that Ms. Rollins, although not an acceptable medical source, was plaintiff's primary mental health provider. (Tr. 21). The ALJ nevertheless discounted her opinion as it was based primarily on plaintiff's subjective reports, inconsistent with the medical opinion evidence from the nonexamining state agency psychologists, and not supported by clinical evidence or observations. *See* Tr. 21. A review of Ms. Rollins' opinion supports the ALJ's conclusion that it was based on plaintiff's subjective reports, which were not credible,[6] and not on clinical observations. *See* Tr. 330 (when asked to identify clinical findings supporting her opinion, including mental status examinations, Ms. Rollins stated that plaintiff "is tearful during sessions sometimes. Her affect is constricted. She reports that she never goes anywhere alone due to anxiety."); Tr. 333 ("[Plaintiff] seems limited in her ability to deal with stressors outside her home (D.) She gets anxious around other

---

[6] As discussed *infra*, the undersigned recommends that the ALJ's decision to discount plaintiff's credibility be affirmed.

people (A.) She would be unlikely to set goals or make her own plans (C.) [Plaintiff] reports

that she attended special classes for math, reading, and spelling in school."); Tr. 335 ("[Plaintiff]

reports that she's had severe problems with anxiety since she was a small child and she dropped

out of school in the 9th grade due to anxiety."). The ALJ is not required to accept medical

opinions from mental health providers which are based on plaintiff's subjective complaints that

are not supported by clinical observations. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273-

74 (6th Cir. 2010). The record demonstrates that the ALJ properly considered Ms. Rollins'

qualifications and treatment relationship with plaintiff, the evidence supporting and contradicting

her opinion, and the consistency of her opinion with other record evidence as required by SSR

06-3p. The undersigned finds that the ALJ's decision to discount Ms. Rollins' opinion is

supported by substantial evidence.

Turning to Dr. Rahman's opinion, as noted by the ALJ, Ms. Rollins' opinion and Dr.

Rahman's 2011 endorsement thereof is inconsistent with plaintiff's progress notes which reflect

that plaintiff's anxiety and depression symptoms decreased with medication. While these

providers opined that plaintiff would be unable to complete a normal workday or workweek due

to her mental impairments (Tr. 332), the record reflects that plaintiff worked 50 hours per week

at a seasonal job in December 2008. (Tr. 356). Further, Dr. Rahman's endorsement of the

opinion is inconsistent with the more recent Centerpoint progress notes in which plaintiff was

observed as having an appropriate affect and euthymic mood (Tr. 402-03) and plaintiff reported

feeling less depressed and was noted as having improvement in reducing anxiety and depression.

(Tr. 402-05). Notably, Dr. Rahman had treated plaintiff only three times as of the date of the

ALJ hearing. (Tr. 39). For these reasons and the reasons stated above in connection with Ms.

Rollins' opinion, the ALJ's decision to give "less weight" to Dr. Rahman's endorsement is substantially supported.

Plaintiff further argues the ALJ erred in formulating plaintiff's RFC by selectively citing only those the portions of the record supporting his finding that plaintiff had no marked limitations. The ALJ found that plaintiff cleaned her home monthly, cooked simple meals, watched television, and socialized with friends and family. (Tr. 14). Plaintiff contends the ALJ mischaracterized these activities and in her brief outlines in chart form plaintiff's statements and the limited manner in which she accomplishes these activities. (Doc. 17 at 13-15). Plaintiff claims the ALJ failed to acknowledge or properly provide for her limitations in activities of daily life and social functioning as demonstrated by these reports. Lastly, plaintiff contends the ALJ's RFC formulation is unsupported as the ALJ cited to records which do not support his conclusions. (Doc. 17 at 15, citing to Tr. 14). Plaintiff's arguments are not well-taken.

First, plaintiff's assertion that the ALJ did not address the myriad reports of plaintiff's depression, lack of motivation, and anxiety is wholly contradicted by the record. The ALJ's decision includes various citations to these reports. *See* Tr. 16 (ALJ discussed plaintiff's testimony that she could not read and write well, could not fill out a job application, could not go out and be around others, could not go to therapy more frequently because she did not want to leave the house, had anxiety attacks that caused her to cry and become physically ill, spent most of her time in bed or on the couch, did no household chores, rarely bathed, and was overwhelmed with stress); Tr. 17 (ALJ noted plaintiff's reports of insomnia, constant crying, increased anxiety and two hour long panic attacks, and lack of motivation); Tr. 18 (the ALJ further discussed plaintiff's panic attacks when in cars or new settings and fear of going anywhere alone due to

19

anxiety). Given the ALJ's extensive discussion of plaintiff's subjective reports of depression and anxiety and how these impairments functionally limit her, plaintiff's argument that the ALJ "cherry-picked" the record is without merit.

Second, the charts included by plaintiff relate only to statements she made in Function Reports completed for disability purposes. *See* Doc. 17 at 13-15, citing Tr. 154-57, 171-74. Not only did the ALJ's lengthy discussion of plaintiff's subjective reports include references to these statements (Tr. 14), it also included multiple references to statements she made in therapy progress notes. Given the ALJ's clear identification and discussion of the evidence plaintiff claims was ignored, the undersigned finds that the ALJ did not err in his analysis of the evidence and adequately addressed both plaintiff's positive and negative subjective reports.

Third, to the extent plaintiff contends the ALJ's decision contains erroneous citations to the record evidence, any error in this regard is harmless. The administrative record in social security cases is often quite lengthy and difficult to decipher due to various handwritten notes. The ALJ cited to Tr. 371, 407, and 419 to support his statement that the evidence indicates that plaintiff "is able to sustain superficial interaction with people she does not know in order to shop, attend her husband, her father's, and a friend's medical appointments with them to make inquiries and express her opinion." (Tr. 14). Plaintiff claims that these records include only plaintiff's reports that she intended to do these activities but no proof that she did them. Plaintiff also asserts the evidence at Tr. 407 does not support the ALJ's statement but includes only a discussion of plaintiff's difficulties with her brother-in-law. (Doc. 17 at 15). Notably, plaintiff herself incorrectly cites to Tr. 413 and not Tr. 407 in discussing this evidence. Notwithstanding any incorrect citations to the record, the undersigned finds that the ALJ's statement is supported.

20

The ALJ did not definitively find that plaintiff had gone to all of these appointments but, rather, that her subjective reports of her intent to go indicated that she was capable of interacting with strangers. Further, the record includes plaintiff's reports that she planned to go with her husband to a doctor's appointment to talk to her husband's doctors (Tr. 371); a notation that plaintiff missed an appointment because she was at the hospital with her father (Tr. 408); plaintiff's report that she was going to the doctor with her daughter (Tr. 417); and reports that plaintiff accompanied a friend to a doctor's appointment. (Tr. 419). This evidence substantially supports the ALJ's finding that the evidence of record indicates that plaintiff is capable of superficial interaction with the public.[7]

The ALJ is the ultimate decision-maker regarding plaintiff's RFC and must consider the opinions of medical sources and other relevant evidence. *See* 20 C.F.R. §§ 404.1527(c), 404.1545. In this case, the ALJ was faced with inconsistent and contradictory evidence. Dr. Tishler and Dr. Pawlaczyk opined that plaintiff had mild limitations in her activities of daily life and social functioning while Ms. Rollins and Dr. Rahman opined that plaintiff was markedly limited in these areas. (Tr. 252, 284, 334, 427). In determining plaintiff's RFC, the ALJ took into consideration the record as a whole, and determined that Ms. Rollins' and Dr. Rahman's opinions were inconsistent with recent treatment notes and unsupported by any evidence aside

---

[7]Insofar as plaintiff argues that the ALJ erred by citing to plaintiff's reports that she drafted a "contract" in support of his finding that plaintiff is able to read and write (Doc. 17 at 12, citing Tr. 14) because the contract was not included as an exhibit, this argument is unpersuasive. The ALJ cited to this evidence to demonstrate, *inter alia*, that it conflicted with plaintiff's testimony that she is not able to complete job applications due to her limited ability to read and write. (Tr. 14, citing Tr. 34-35). Further, the ALJ was not finding, as plaintiff suggests, that she is capable of drafting a legally enforceable contract. The undersigned also notes that plaintiff's argument on this point undercuts her claims that her statements are credible. Either the plaintiff is unable to read and write as she testified or she is capable of drafting an informal rental contract for her brother-in-law as she stated to her therapist. Regardless of which statement is true, this supports the ALJ's finding that plaintiff is less than credible, discussed further *infra*, and, consequently, the opinions of Ms. Rollins and Dr. Rahman, which relied heavily on plaintiff's subjective reports, were appropriately discounted.

21

from plaintiff's subjective reports. The ALJ acknowledged that plaintiff did have some functional limitations and limited her to work where she would be required to remember and carry out only simple to moderately complex instructions, sustain attention to simple tasks without quotas, and have limited interpersonal demands in a nonpublic work setting. (Tr. 15). It is the ALJ's function to resolve inconsistencies and conflicts in the medical evidence, *see King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984), and the record reveals that the ALJ properly considered the totality of the evidence in the record in assessing plaintiff's RFC.

Although the evidence documents plaintiff's severe mental impairments, the ALJ's determination that plaintiff's impairments do not preclude her from work with the above limitations is supported by substantial evidence. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) (holding that an ALJ's finding that a medical opinion conflicts with other evidence in the record is a sufficient reason to discount the opinion); 20 C.F.R. § 404.1527(c)(2) ("If any . . . medical opinion(s) is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence . . . ."). While the record could conceivably support a contrary finding, the Social Security Act does not permit the reviewing court to resolve conflicts in the evidence. *Cutlip v. Sec'y of H.H.S.*, 25 F.3d 284, 286 (6th Cir. 1994). The Court's review is limited to determining whether substantial evidence supports the ALJ's conclusion. Here, the ALJ cited ample evidence to support his conclusion that notwithstanding plaintiff's psychological impairments, she is capable of engaging in substantial gainful employment.

Accordingly, the undersigned finds that the ALJ did not err in weighing the opinion evidence of record or in formulating plaintiff's RFC.

22

3. The ALJ did not err in discounting plaintiff's credibility.

For her final assignment of error, plaintiff contends "the ALJ's reading of the [Centerpoint] progress notes and his interpretation of the severity of functional limitation they present is completely skewed and inaccurate. This has negatively affected the ALJ's analysis of the medical opinions and [p]laintiff's activities of daily living, which in turn led the ALJ to an inaccurate and unreasonable conclusion regarding plaintiff's credibility." (Doc. 17 at 21). Plaintiff asserts that the ALJ's view of her credibility is unsupported by the evidence and, accordingly, this matter should be remanded.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Kirk*, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers*, 486 F.3d at 247. Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding

23

symptoms or their intensity and persistence are not supported by objective medical evidence, the

ALJ must make a determination of the credibility of the claimant in connection with his or her

complaints "based on a consideration of the entire case record." *Id.* Consistency between a

claimant's symptom complaints and the other evidence in the record tends to support the

credibility of the claimant while inconsistency, although not necessarily defeating, should have

the opposite effect. *Id.*

Substantial evidence supports the ALJ's determination that plaintiff's subjective

statements regarding the severity of her mental impairments are not fully credible. The ALJ

noted throughout his decision the various ways in which plaintiff's statements were inconsistent

in determining to discount her credibility. First, the ALJ identified that plaintiff reported earning

$190,772 from 1999 to 2009 in salary from her husband's painting company, but that she stated

she did no work for the company. (Tr. 13, citing Tr. 37, 131-34). Insofar as plaintiff asserts that

she became disabled as of February 1, 2008, the ALJ reasonably noted that evidence showing

that she drew a salary in 2008 and 2009 casts doubt on plaintiff's credibility with respect to her

work activity. The ALJ further noted inconsistencies between plaintiff's hearing testimony and

her statements to agency officials and her medical providers. *See* Tr. 14, citing Tr. 34-35, 155-

60, 170-77 (plaintiff testified that she could not read or write well enough to complete a job

application but plaintiff was able to fill out disability forms);[8] Tr. 20, citing Tr. 155, 172, 239

(plaintiff initially reported in a Function Report that she had no personal hygiene issues and

---

[8] Plaintiff argues that the ALJ's determination that she filled out disability forms "satisfactorily" is unsupported by the evidence because she put her date of birth down on the signature line instead of the date she completed the report. (Doc. 17 at 12, citing Tr. 177). Plaintiff's argument fails to acknowledge the fact that although she made one mistake on one form (notably, plaintiff correctly dated the other Function Report, *see* Tr. 160), she was able to read and complete the forms on her own. Further, plaintiff reported in Centerpoint progress notes that she reads. *See* Tr. 298. This evidence substantially supports the ALJ's determination that plaintiff's statement that she is unable to read and write is not credible.

Centerpoint notes indicate that she was well groomed, but plaintiff's second Function Report includes statements that she does not bath or dress herself regularly). The ALJ also noted that plaintiff's reported daily activities and social functioning reports were inconsistent throughout the record. (Tr. 20, citing 223, 298, 343, 411, 416) (while plaintiff reported in Function Reports that she was unable to concentrate and had no hobbies or interests, Tr. 157, 174, she stated in progress notes that she engaged in full time work, read and was able to focus on television series, and enjoyed scrapbooking and playing Farmville on the internet for five to six hours at a time). In light of the evidence considered by the ALJ, the inconsistencies between plaintiff's statements and testimony and other evidence of record, and the deference due to the ALJ in making credibility determinations, the undersigned concludes the ALJ's credibility finding is supported by substantial evidence and should be affirmed

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 2/4/2013

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

RHONDA BRAUN,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:12-cv-12
Dlott, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

26